# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JUDY WESTBROOK,<br><br>    Plaintiff,<br><br>v.<br><br>DTG OPERATIONS, INC., an Oklahoma corporation doing business as DOLLAR RENT A CAR; DOES I-X, inclusive; and ROES I-X, inclusive,<br><br>    Defendants. | Case No. 2:05-CV-00789-KJD-PAL<br><br>**ORDER** |

Presently, the Court has before it Defendant's Motion for Summary Judgment (#37). Plaintiff filed a response in opposition (#43), to which Defendant filed a reply (#47).

Also before the Court are Plaintiff's Motion for Partial Summary Judgment Regarding Defendant's Liability for Act Constituting a Battery (#35), Motion for Partial Summary Judgment that the Exclusive Remedy Provision of the Nevada Industrial Insurance Act Does Not Bar Plaintiff's Claims (#36), and Motion for Partial Summary Judgment that Plaintiff is a Qualified Individual Under the Americans with Disabilities Act (#38). Defendant filed responses in opposition (#41, 42, 44), to which Plaintiff replied (#45, 46, 48).

**I. Background.**

In August 1999, Defendant hired Plaintiff as a Rental Sales Agent ("RSA") for the facility that services the McCarran International Airport ("McCarran Airport") in Las Vegas, Nevada. A RSA, commonly referred to as a counter agent, is the individual with whom customers interact at the rental counter when renting a car. RSAs servicing McCarran Airport may work at several different facilities, including the airport terminal, the airport base and various hotels in the Las Vegas area. Plaintiff, however, was hired to work at the airport base counter and airport terminal counter locations. The airport terminal counter is located physically in the airport terminal and the airport base counter is located at the Dollar office onsite at the airport. The main job duties of a RSA includes greeting customers, processing rentals, selling optional services, answering and receiving phone calls, resolving overdue rentals, responding to customer questions and complaints, servicing vehicles for customer rentals and communicating with shuttle drivers for customer pick-up. Plaintiff performed her job well and Defendant often recognized her as a top rental sales agent.

Plaintiff had two lumbar surgeries in Indianapolis, Indiana in 1980 and 1982. In 2000, after experiencing lower back pain, Plaintiff had another back surgery performed by her Las Vegas treating physician, Dr. Thalgott. On January 29, 2001, Plaintiff submitted a Certificate of Disability relating to her lower back. The certificate provided that Plaintiff could only work with the following permanent restrictions: "no standing longer than 30 minutes, must be able to change positions as needed. Must be able to sit between customers as needed." This permanent restriction concerning Plaintiff's lumbar fusion was never lifted nor retracted. Plaintiff had surgery on her neck in 2001, also performed by Dr. Thalgott. Plaintiff later submitted a full duty work release effective October 3, 2001, relating to her cervical fusion. The full duty work release made no mention of her lumbar fusion. In his deposition, Dr. Thalgott specifically testified that he never lifted Plaintiff's work restrictions as it pertained to her lumbar fusion.

On March 3, 2003, Plaintiff received another Certificate of Disability from Dr. Thalgott. The certificate related to Plaintiff's lumbar fusion and contained the following permanent restrictions: "no standing longer than 30 minutes, must be able to change positions as needed. Must be able to sit between customers as needed." Plaintiff tendered this certificate of disability to Defendant in May 2003 after the chairs located behind the airport terminal and base counters were taken away.[1]

Prior to May 2003, there were chairs located behind the airport terminal counter and the airport base counter. It was company policy to allow RSAs to sit in them but only between renting vehicles to customers. RSAs are not permitted to sit while renting to customers. Prior to May 2003, Plaintiff was allowed to use the chairs to perform her job duties as a RSA.

In May 2003, Defendant held a national conference in Las Vegas. In preparation for the conference, Jim McLoughlin, Manager for Las Vegas, performed inspections of the airport operations. During the inspection, Mr. Loughlin noticed several RSAs inappropriately sitting and lounging in their chairs while conducting rentals with customers. Accordingly, and without any sense of proportional response, Mr. Loughlin decided to remove all the chairs from behind the airport terminal and base sales counters. RSAs were then required to stand while at the counter whether they were assisting a client or not.

Around May 11, 2003, shortly after the chairs were removed, Plaintiff spoke with Frances Poulsen, Station Manager, and asked for her chair to be returned. Ms. Poulsen allegedly informed Plaintiff that she could not return the chair to her, but that she could work at a hotel location instead where she would have the opportunity to sit. Apparently, RSAs at the majority of hotel locations were allowed to sit while waiting on customers. After her discussion with Ms. Poulsen, Plaintiff prepared a letter to Jimmy Cook, Senior Station Manager, requesting that her chair be returned due to

---

[1]Plaintiff also submitted a return to work authorization from Southern Nevada Surgery Specialists dated April 22, 2003 stating that she was able to return to work with no restrictions as of April 24, 2003. This return to work authorization only related to a gallbladder surgery Plaintiff had in April 2003.

her "physical requirements for back support." Plaintiff was requested to provide medical documentation supporting her request. Plaintiff provided the Certificate of Disability from Dr. Thalgott's office dated March 3, 2003.

Like Ms. Poulsen, Mr. Cook allegedly reiterated the offer allowing Plaintiff to work at a hotel location, where she would have the opportunity to sit as needed. Plaintiff was paid an hourly salary along with incentive pay which was determined by the amount of her sales and the sale of additional options, such as insurance. Plaintiff declined this opportunity believing that it would result in a significant reduction in pay and loss of seniority. Plaintiff was also allegedly offered the option of working all of her shifts at the airport base location, where she would have the opportunity to sit at the manager's desk located next to the sales counter as needed. At this time Plaintiff worked five days a week – three days at the airport terminal location and two days at the airport base location. Plaintiff was allowed to sit, as needed, at chairs provided in the break rooms at the airport terminal location. However, it was impossible for Plaintiff to perform her job duties while sitting in the break room.

Although the parties dispute the exact date, management returned the chairs behind the rental counters sometime in June 2003. RSAs were still subject to the prior policy of not being allowed to sit while renting to customers; however, an exception was made for Plaintiff and she was allowed to sit as often as needed. Before the chairs were returned and the exception made for Plaintiff, Plaintiff had to stand the whole time she was at the counter.

Plaintiff was treated by her primary treating physician, Dr. Thalgott, on July 1, 2003. While Dr. Thalgott did not observe any hard neurological deficits, i.e. she could walk, move and respond normally to pain, Plaintiff "clearly had nerve damage based on electrical conductivity," and "her right upper extremity showed she had a C7 problem." Dr. Thalgott felt that she had a rapid degeneration of her adjacent segments in her neck and that Plaintiff was pretty miserable given that

her condition had deteriorated significantly.  Dr. Thalgott has opined, with a reasonable degree of medical certainty, that standing exacerbated Plaintiff pre-existing back and neck problems.

On July 4, 2003, Plaintiff filled out forms enabling her to file a workers' compensation claim. Plaintiff first filled out an Employee Injury Form stating that she experienced "severe nerve damage in my neck and leg, caused by standing for long periods of time, against Dr.'s request."  The Report was signed by Plaintiff's supervisor Misty Guillermo.  Plaintiff also filled out a Supervisor's Accident Report which stated that she suffered from "severe neck and leg damage" due to her work conditions.  This form was also signed by Ms. Guillermo.

Starting July 14, 2003, Plaintiff took leave pursuant to the Family Medical Leave Act ("FMLA").  While on this leave, Plaintiff had two surgeries in September 2003 – both on her neck. After Plaintiff had exhausted her FMLA leave, Defendant placed her on short-term disability leave. Plaintiff's leave was then converted to long-term disability.  Plaintiff is currently on an indefinite leave of absence as Defendant has never discharged her.

Plaintiff filed a workers' compensation claim with Defendant's third party administrator, Cambridge Integrated Services Group, Inc., who denied the claim on August 11, 2003.  Plaintiff appealed this decision to a hearing officer, who affirmed the claim denial at a hearing held on December 10, 2003.  Plaintiff appealed the decision and order of the hearing officers to the Nevada Department of Administration, Appeals Officer.  A hearing was scheduled regarding this appeal for September 14, 2004. On September 8, 2004, Plaintiff, through her attorney, voluntarily dismissed the appeal and requested that the hearing be vacated.

On May 24, 2006, a Social Security Administrative Law Judge issued a determination finding Plaintiff disabled since December 18, 2003, as defined by the Social Security Act and Regulations. Plaintiff filed the instant action alleging several federal and state law causes of action.

**II.  Analysis.**

Summary Judgment may be granted if the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56©; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 578 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party.  See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the nonmoving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1999).  Summary Judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary Judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

B.  Discrimination Claims.

Plaintiff alleges that Defendant discriminated against her pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., and Nevada Revised Statute. 613.330, et seq., the Nevada state law that prohibits discrimination based upon disability.  The language of

1  section 613.330 is almost identical to the ADA and the Nevada Supreme Court looks to federal
2  discrimination cases for guidance in applying the corresponding Nevada statute.  See Hirschhorn v.
3  Sizzler Rest. Int'l, Inc., 913 F. Supp. 1393, 1398 (D. Nev. 1995) (citing Apeceche v. White Pine
4  County, 96 Nev. 723, 615 P.2d 975, 977 (1980)).  Accordingly, both the ADA and corresponding
5  state law claim will be analyzed together.  See Puckett v. Porsche Cars of N. Am., Inc., 976 F. Supp.
6  957, 960 (D. Nev. 1997).

7      Plaintiff alleges that Defendant discriminated against her by failing to provide her a
8  reasonable accommodation.  See Foster v. Arthur Anderson, LLP, 168 F.3d 1029, 1032 (7th Cir.
9  1999).  To recover on a theory of failure to reasonably accommodate, Plaintiff must prove that:  (1)
10 she was disabled within the meaning of the ADA; (2) she was able to perform the essential functions
11 of her job with or without reasonable accommodation; and (3) Defendant failed to make a reasonable
12 accommodation.  See Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246-47 (9th Cir. 1999);
13 Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

14     Defendant argues that Plaintiff cannot establish the first and third prongs of the prima facie
15 case.  To establish a prima facie case for failure to accommodate, Plaintiff must first show that she
16 was disabled within the meaning of the statute.  See Summers v. Teichert & Son, Inc., 127 F.3d
17 1150, 1153 (9th Cir. 1997).  A "qualified individual with a disability" is a person "with a disability
18 who, with or without reasonable accommodation, can perform the essential functions of the
19 employment position that such individual holds."  Id. (citing 42 U.S.C. § 12111(8)).  In the context
20 of the ADA, the term "disability" is defined as:  (1) a physical or mental impairment that
21 substantially limits one or more of the major life activities of such individual; (2) having a record of
22 a physical or mental impairment that substantially limits one or more of the major life activities of
23 the person; or (3) "being regarded as having" a physical or mental impairment that substantially
24 limits one or more of the person's major life activities.  See id. (citing 42 U.S.C. § 12102(2)).  The
25 definition of disability as used in 42 U.S.C. 12102(2) is in the disjunctive; a person need fit only one
26

of the three definitions to be disabled for the purpose of the ADA. See id. At the time Plaintiff requested the accommodation of the chair, Plaintiff had the physical impairment of degenerative disc disease and had already undergone five major surgeries to her cervical and lumbar spine. Coupled with the evidence from her doctor, there are genuine issues of material fact concerning whether she is disabled under the ADA. See, e.g., Selandia v. Regents of Univ. Of Cal., 2006 WL 463127, *4 (E.D. Cal. Feb. 24, 2006). Because credibility will be an issue as to this claim, summary judgment is inappropriate for either party. See S.E.C. v. Korocorp Indus., Inc., 575 F.2d 692, 699 (9th Cir. 1978).

Although conceding that Plaintiff satisfies the second prong of the failure to accommodate prima facie case, Defendant argues that she cannot prove that Defendant failed to provide her a reasonable accommodation. When an individual demonstrates that she suffers from an actual disability, as defined by the ADA, her employer has an affirmative duty to attempt to provide a reasonable accommodation for her. See Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 680 (9th Cir. 2001); 42 U.S.C. § 12112(b)(5)(A). This affirmative obligation is only imposed upon an employer if the accommodation would not impose undue hardship on the operation of the business. See Willis, 244 F.3d at 680. In its motion and other filings, Defendant lists several accommodations it alleges to have afforded Plaintiff: transfer to a hotel location, work exclusively at the airport base location, and use a chair in the back room whenever needed. Plaintiff has proffered evidence contradicting whether such accommodations were actually afforded as well as evidence dispelling whether the alleged accommodations were actually reasonable. Genuine issues of material fact exist whether Plaintiff has satisfied the third prong of the failure to accommodate prima facie case. The irony in this case is that the absolutely least burdensome accommodation was to have Plaintiff still use a chair while renting cars. The only evidence that the Court has before it implies that this accommodation was not allowed because the area manager did not believe it would make a good impression on corporate executives visiting Las Vegas.

C. Nevada Industrial Insurance Act ("NIIA") and Remaining Tort Claims.

Plaintiff alleges that Defendant's removal of the chairs behind the airport terminal caused her neck and back injuries which have resulted in spinal surgeries, severe shock to her nervous system and great pain, suffering and anxiety. Due to these injuries, Plaintiff brings the following state law claims: negligence per se, gross negligence, negligence; intentional infliction of emotional distress, negligent infliction of emotional distress; negligent hiring, retention and supervision; and battery. Defendant argues that Plaintiff's state law tort claims are preempted by the Nevada Industrial Insurance Act ("NIIA").

The NIIA was created as a comprehensive system of compensation for employees who are injured on the job. See Nev. Rev. Stat. 616A.020(1). The terms and conditions of the NIIA provide the exclusive remedy to any employee who is injured in the course of her employment due to her employer's negligence. See id.; Conway v. Circus Circus Casinos, 116 Nev. 870, 874 (2000) ("An employer who commits an intentional tort upon an employee cannot claim that the intentional act resulted in an accidental injury."); King v. Penrod Drilling Co., 652 F. Supp. 1331, 1334 (D. Nev. 1987).

The NIIA defines an "injury," in relevant part, as "a sudden and tangible happening of a traumatic nature, producing an immediate or prompt result which is established by medical evidence." Nev. Rev. Stat. 616A.265(1). The NIIA defines an "accident" as "unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." Id. 616A.030. Thus, "[i]n order for an incident to qualify as an accident [for purposes of the NIIA], the claimant must show the following three elements: (1) an unexpected or unforeseen event; (2) happening suddenly and violently; and (3) producing at the time, or within a reasonable time, objective symptoms of injury." Conway, 116 Nev. At 874.

Here, after the Court has reviewed the submitted evidence, there are genuine issues of material fact as to whether Plaintiff's injury constitutes an incident or accident for purposes of

9

Nevada Revised Statute 616A. The cases cited by the parties provide a panoply of situations where the courts have or have not found there to be an incident or accident for purposes of the NIIA. Resolution of this claim will depend on a review of all the evidence as well as credibility determinations.

### D. Negligence Claims.[2]

Defendant next argues that Plaintiff cannot establish the prima facie case for her many negligence claims. First, Defendant argues that Plaintiff cannot establish that it breached a duty of care required to sustain her negligence and gross negligence claims. Defendant premises this argument on its allegation that it provided a reasonable accommodation. As discussed previously, genuine issues of material fact surround whether Defendant provided reasonable accommodations. Accordingly, this argument alone is insufficient to grant summary judgment.

Defendant next argues that Plaintiff cannot make a claim for negligence per se based on a violation of the ADA. The Court agrees. "Whether a particular statute, administrative regulation or local ordinance is utilized to define the standard of care in a negligence action is clearly a question of law to be determined exclusively by the court." Vega v. E. Courtyard Assoc., 117 Nev. 436, 439 (2001). "When a defendant violates a statute which was designed to protect a class of persons to which the plaintiff belongs, and thereby proximately causes injury to the plaintiff, such a violation constitutes negligence per se." Barnes v. Delta Lines, Inc., 99 Nev. 688, 690 (1983). The Nevada Supreme Court has limited its recognition of negligence per se claims to violations of building code, traffic statutes, and municipal codes. See, e.g., Vega, 117 Nev. at 441.; Barnes, 99 Nev. at 690-91; Del Piero v. Phillips, 105 Nev. 48, 51-53 (1989). Here, the ADA does not fall under the class of statutes that the Nevada Supreme Court would allow as a predicate for negligence per se. See, e.g., Scarborough v. Brown Group, Inc., 935 F. Supp. 954, 964 (W.D. Tenn. 1995) (finding that Title VII

---

[2] Plaintiff's claim of negligent infliction of emotional distress will be addressed with her claim of intentional infliction of emotional distress.

10

is not the type of law encompassed under negligence per se because such claims may be supported only by statutes and regulations relating to public safety, such as health regulations and rules of the road.).  Accordingly, Plaintiff's negligence per se claim fails as a matter of law.

Defendant next argues that Plaintiff cannot succeed on her negligent hiring, rentention and supervision claim.  A review of the evidence reveals that there are genuine issues of material fact concerning this claim.  Defendant's argument that this negligence claim is reserved to the hiring, supervision, retention of dangerous or violent employees is not supported by the cases cited or the general principles of this tort.

### D.  Intentional Tort Claims.

Plaintiff brings two claims that can be considered intentional torts – battery and intentional infliction of emotional distress.  Plaintiff cannot establish the prima facie case for either one.  To sustain a claim for intentional infliction of emotional distress, Plaintiff must produce evidence of: (1) the defendant's conduct was extreme and outrageous; (2) defendant's conduct was non-privileged; (3) the defendant either intended to cause the plaintiff emotional distress or demonstrated reckless disregard for the probability of causing emotional distress; (4) the plaintiff actually suffered severe or extreme emotional distress; and (5) the defendant's conduct proximately caused the distress.  See Alam v. Reno Hilton Corp., 819 F. Supp. 905, 911 (D. Nev. 1993) (citing Nelson v. City of Las Vegas, 99 Nev. 548, 555, 665 P.2d 1141, 1145 91983)).  Liability under this tort is reserved for those rare cases where the defendant's conduct goes beyond all possible bounds of decency, and is atrocious and utterly intolerable.  See id.  It is for the Court to determine whether the conduct alleged is extreme and outrageous and whether the plaintiff has suffered severe emotional distress.  See id.  A finding either that the conduct is not extreme and outrageous or that the distress is not severe is fatal to a claim of intentional infliction of emotional distress.  See id.

Plaintiff cannot prove that Defendant's conduct was extreme or outrageous, or that it went beyond all possible bounds of decency.  Removing chairs falls under none of these categories.  While

Plaintiff would possibly have a colorable claim if she was the only one forced to work without a chair, the evidence produced indicates that the chairs were removed for everyone working at the airport locations. The law requires more to qualify as extreme and outrageous.[3]

To sustain a claim for battery, Plaintiff must produce evidence that: (1) the actor intended to cause harmful or offensive contact to the plaintiff's person and (2) that this contact actually occurred. See Restatement (Second) of Torts §§ 13, 18; see also Burns v. Mayer, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001). Plaintiff's claim is quite perplexing as she produced no evidence that she was subjected to unlawful or offensive contact. Rather, Plaintiff testified that when Defendant took away the chairs from all the airport counters, it indirectly applied offensive or harmful contact to her person. This is too tenuous. The courts that have discussed the concept of "indirect" contact have done so under the idea that under some circumstances a defendant's offensive contact with an object attached to or identified with the plaintiff's body may be sufficient to constitute a battery. See, e.g, Picard v. Barry Pontiac-Buick, Inc., 654 A.2d 690, 694 (R.I. 1995); Restatement (Second) of Torts § 18, cmt. c. To succeed on a claim of battery in reference to removing chairs, Plaintiff would need to demonstrate that Defendant or its agent in fact pulled the chair from under her as she was sitting down. Her testimony foreclosed this scenario. Moreover, Plaintiff has produced no evidence that Defendant intended to unlawfully invade Plaintiff's physical well-being through harmful or offensive contact. Again, Plaintiff's arguments are too tenuous to support a battery claim.

---

[3]Additionally, and for the same reasons, Plaintiff cannot establish a claim for negligent infliction of emotional distress. The elements of this claim are: (1) the defendant's conduct was extreme or outrageous; (2) defendant acted negligently; (3) plaintiff suffered emotional distress and physical injury; and (4) the defendant's conduct proximately caused the distress. See State v. Eighth Jud. Dist. Ct. ex rel. County of Clark, 118 Nev. 140, (2002); Chowdhry v. NLVH, Inc., 851 P.2d 495; see also Hutton v. Gen. Motors Corp., 775 F. Supp. 1373, 1381-83 (D. Nev. 1991). Plaintiff cannot prove that Defendant's act of removing chairs from behind a service counter constitutes extreme and outrageous behavior.

12

### III. Conclusion.

Genuine issues of material fact surround Plaintiff's ADA claim especially whether she is disabled for purposes of the ADA and whether Defendant provided reasonable accommodations. Additionally, genuine issues of material fact surround whether Plaintiff's injuries resulted from an "incident" and "accident" as defined by Nevada Revised Statutes 616A, such that the NIIA would be the exclusive remedy for her negligence claims. Additionally, genuine issues of material fact exist for Plaintiff's negligence, gross negligence and negligent hiring, retention and supervising claims. However, summary judgment is appropriate for Plaintiff's claims of battery, intentional infliction of emotional distress and negligent infliction of emotional distress because Plaintiff cannot establish a prima facie case for them. Summary judgment is also appropriate for Plaintiff's claim of negligence per se as it fails as a matter of law.

So far the evidence produced suggests that the removal of the chairs and Plaintiff's prohibition on using one could have been motivated by Defendant's upcoming national convention and a desire to make a favorable impression on visiting executives, or at least to avoid an unfavorable impression. Common sense would have allowed Plaintiff the use of a chair given her documented health problems. Moreover, sound business judgment would dictate giving Plaintiff a chair as it would be cheaper and less of a hassle then rearranging schedules and it would allow her to forego more breaks in the backroom thus resulting in more time selling services and incidentals to prospective clients.

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#37) is **GRANTED IN PART and DENIED IN PART**.

IT IS FURTHER ORDERED that to the extent Defendant's Motion (#37) seeks summary judgment as to Plaintiff's claims of negligence per se, battery, intentional infliction of emotional distress and negligent infliction of emotional distress, the motion is **GRANTED**.

IT IS FURTHER ORDERED that in all other respects, Defendant's Motion for Summary Judgment (#37) is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment Regarding Defendant's Liability for Act Constituting a Battery (#35), Motion for Partial Summary Judgment that the Exclusive Remedy Provision of Nevada Industrial Insurance Act Does Not Bar Plaintiff's Claims (#36), and Motion for Partial Summary Judgment that Plaintiff is a Qualified Individual Under the Americans with Disabilities Act (#38) are **DENIED**.

DATED this 28th day of February 2007.

_____
Kent J. Dawson
United States District Judge